AETNA LIFE INSURANCE COMPANY, Respondent, v AVALON ORCHARDS, INC., et al., Appellants, et al., Defendant.

Third Department, July 17, 1986

**APPEARANCES OF COUNSEL**

*William G. Kerwick* for appellants.

*Frederick S. Dennin* for respondent.

**OPINION OF THE COURT**

YESAWICH, JR., J.

In December 1982, plaintiff obtained a judgment of foreclosure and sale against defendants Avalon Orchards, Inc. and Kent L. Aldershof (hereinafter defendants) in the amount of $1,006,926.33. The public sale, conducted January 6, 1983, at which plaintiff bid in the mortgaged property for $650,000—the then value of the property as claimed by plaintiff's appraiser—was subsequently set aside because of a procedural defect and a new sale was ordered (103 AD2d 948); at the second sale, held October 22, 1984, plaintiff was again the successful bidder and the amount bid was the same. Plaintiff then moved for an order confirming the sale and leave to enter a deficiency judgment in the amount of $452,417.26. To demonstrate that the mortgaged property had sold for a fair price, as RPAPL 1371 (2) requires, plaintiff made available to Special Term an updated appraisal report which placed the fair market value of the property as of the date of the second

sale at $335,000. That figure was not challenged by defendants, who confirm that the property had "substantially diminished" in value from its worth at the time of the first sale —as attested to by Aldershof—of $1,650,000. Instead, defendants attribute this decrease in value to plaintiff's mishandling of the property and on that ground, *inter alia,* seek to bar entry of any deficiency judgment. Special Term granted plaintiff's application in all respects and defendants appeal.

■ Two of the several arguments advanced by defendants merit discussion. Insofar as defendants question the reasonableness of the counsel fees subsumed in the deficiency judgment, their grievance is untimely, for these fees were awarded in the original judgment of foreclosure and are final since they affect the amount of the debt *(see,* 2A Warren's Weed, New York Real Property, Foreclosure of Mortgage, § 14.04 [4th ed]; *cf. Ogdensburg Sav. & Loan Assn. v Moore,* 100 AD2d 679, 679-680, *appeal dismissed* 62 NY2d 942). Moreover, an appeal from that judgment was withdrawn. And the kindred claim that further legal fees cannot be charged to defendants because of the need to conduct the second sale is a spurious contention, for it appears from the record that no additional legal fees were levied.

■ More effective is the assertion that defendants are entitled to offset against any deficiency the substantial waste the mortgaged premises allegedly underwent during the period plaintiff temporarily possessed and owned the property pursuant to the first foreclosure sale. Although ordinarily an application for a deficiency judgment focuses upon the fairness of the auction sale price, matters which could not have been put forth and litigated in the foreclosure action proper can nevertheless be taken into consideration in the deficiency proceeding *(Gray v Bankers Trust Co.,* 82 AD2d 168, 171, *lv denied* 58 NY2d 604; *see,* 2A Warren's Weed, New York Real Property, Foreclosure of Mortgage, § 17.08 [4th ed]). Defendants' argument falls into the latter category. Beyond that, since mortgage foreclosures are circumscribed by equity, elementary fairness dictates examination of defendants' position in this regard for, as *Monaghan v May* (242 App Div 64, 67) makes plain: "No rights vest, perforce the judgment of foreclosure, in plaintiff for a deficiency judgment in any amount until plaintiff satisfies a court of equity that it would be equitable and just, as a consequence of what has occurred on the sale, to authorize the entry of a deficiency judgment".

Where, as here, there has been a flawed foreclosure proceed-

ing, equity's principal goal has been to restore the parties to the positions they occupied before the nullified sale *(see generally,* 2 Wiltsie, Real Property Mortgage Foreclosure § 771, at 1251 [5th ed]; 2A Warren's Weed, New York Real Property, Foreclosure of Mortgage, § 15.29 [4th ed]; *cf. Willets v Van Alst,* 26 How Prac 325, 344). To achieve this objective in analogous circumstances, equity has called upon occupants of the property to account for the rents and profits, or the value of their use and occupation, for the period subsequent to a voided or voidable foreclosure of a mortgage *(see, Hubbell v Moulson,* 53 NY 225; Osborne, Handbook on the Law of Mortgages §§ 164-176, at 285-304 [2d ed]).

Despite the obvious complexity of the parties' equities, applying similarly fashioned relief to their unique situation does not seem at all inappropriate for, with the setting aside of the first sale, plaintiff's status was redefined from that of an absolute owner in possession to that of a mortgagee in possession.* As such, plaintiff was bound, while it controlled and possessed the property, to use reasonable means to preserve the property from loss and injury and to conserve its value, except, of course, for depreciation caused by ordinary wear and tear occasioned by time *(see,* Osborne, Handbook on the Law of Mortgages § 168, at 291 [2d ed]). Just as an action for waste lies against a mortgagee in possession whose mismanagement damages the value of the property (3 Kerr, Treatise on the Law of Real Property § 2172, at 2185-2186 [NY 1895]; *see, e.g., Van Pelt v McGraw,* 4 NY 110), so also does such an action lie against a mortgagee who purchases mortgaged premises at a foreclosure sale that is later voided *(see, e.g., Fort v Roush,* 104 US 142).

However, whether the deficiency judgment that has been entered herein is indeed justified cannot be determined without consideration being given to defendants' allegations that plaintiff permitted substantial waste to be visited upon the property from and after consummation of the first foreclosure sale. These allegations bear directly on the satisfaction, in

---

* The dissenters point to defendants' failure to obtain a stay of the first sale pending appeal as the ground for holding the title of the purchaser there intact. In our view, extinguishment of the purchaser's rights was implicit in this court's prior determination to order a new sale; otherwise, on remittal, there would have been nothing to sell. As for the lack of a stay, we note that a similar failure posed no impediment to vacatur of an improperly noticed judicial sale and remittal for a new sale in *Shaw v Russell* (95 AD2d 977, *affd* 60 NY2d 922).

whole or in part, of the mortgage debt and ought—not only from the standpoint of simple justice, but judicial economy as well—to be resolved herein *(see, Hubbell v Moulson,* 53 NY 225, 228-229, *supra; cf.* Osborne, Handbook on the Law of Mortgages § 165, at 287 [2d ed]).

This waste charge does not appear to be specious. Rather, it has some substance in the record in that it is averred that the mortgaged premises depreciated over the two-year period between the two foreclosure sales—from $1,650,000 in November 1982 to $335,000 in October 1984—and that for a substantial portion of that period the premises were under plaintiff's possession and control. Defendants attribute this diminution in value to among other things "the failure to maintain the property by plaintiff". That assertion, which is not controverted, at the very least raises a factual question respecting the damages defendants attribute to waste *(see, Marine Midland Bank v Harrigan Enters.,* 118 AD2d 1035), and they should be afforded an opportunity to prove them. Remittal is therefore required for the purpose of conducting a hearing on the issue of these damages, predicated on waste chargeable to plaintiff during its possession and control of the mortgage premises as a result of the first sale—measured from the fair and reasonable market value on that date—and to determine the amount, if any, to which plaintiff's right to a deficiency judgment should be offset thereby *(see, Broward Natl. Bank v Starzec,* 30 AD2d 603, 604).

KANE, J. (dissenting in part and concurring in part). We are unable to agree with the majority that "plaintiff's status was redefined from that of an absolute owner in possession to that of a mortgagee in possession". Since defendants never applied for, or acquired, a stay pending appeal, our subsequent reversal did not affect the title of the purchaser *(see, Livingston v Bauchhens,* 254 App Div 692). Consequently, during the period in question, plaintiff was obligated to pay the real property taxes while it was owner and the inclusion of said item in the deficiency judgment was erroneous. Additionally, it should be noted that since plaintiff remained the owner, title to any third-party purchasers is not affected.

We agree with the majority that the matter should be remitted for further proceedings, but for slightly different reasons. Since under our theory, our reversal of the first sale did not affect plaintiff's title *(Livingston v Bauchhens, supra),* we are not technically concerned with waste between the

period of the first and second sale. Rather, we are only concerned here with whether a market value of $650,000, found by plaintiff's appraiser and adopted by the court after the first sale was proper.* The court therein, without conducting a hearing, accepted plaintiff's appraisal and rejected the valuation placed on the property by defendant Kent L. Aldershof. Defendant Aldershof's affidavit, however, created questions of fact and the court should have conducted a hearing to determine the value of the property at the time of the first sale (see, Broward Natl. Bank v Starzec, 30 AD2d 603; 21 NY Jur, Evidence, §§ 453-455, at 568-572 [1961]). As there was not a valid determination of value at the time of the first sale, the matter must be remitted for a hearing to determine the market value as of the time of the first sale (RPAPL 1371; see also, Livingston v Bauchhens, supra). Indeed, a review of the record reveals that defendants' allegations of waste actually are a dispute with the court's 1983 acceptance of plaintiff's appraisal, establishing the value of the property at $650,000.

MAHONEY, P. J., and LEVINE, J., concur with YESAWICH JR., J; KANE and WEISS, JJ., dissent in part and concur in part in an opinion by KANE, J.

Order reversed, on the law, without costs, and matter remitted to Supreme Court for further proceedings not inconsistent herewith.

---

* It should be noted that although the property diminished in value to $335,000, plaintiff again paid $650,000 at the second sale. Accordingly, the $335,000 figure is irrelevant (RPAPL 1371 [2]).